UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

ORLANDO RAMOS,
  Plaintiff,

v.                                                        Civil No. 05-1164 (HL)

METROPOLITAN LIFE INSURANCE
COMPANY,
  Defendant.

**OPINION AND ORDER**

Plaintiff Orlando Ramos ("Ramos") brings this action under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq*. ("ERISA"), against Metropolitan Life Insurance Company ("MetLife"), seeking to recover benefits to which he is allegedly entitled under the American Home Products Corporation Group Insurance Programs' Long Term Disability ("LTD") plan, an employee welfare benefits plan governed by ERISA. Before the Court is Plaintiff Ramos' Motion for Judgment on the Administrative Record. (Docket No. 18). Defendant MetLife submitted an Opposition to Plaintiff's Motion for Judgment and a Cross Motion for Judgment on the Administrative Record. (Docket No. 22). After review of the record and submissions by counsel, the Court denies Plaintiff's Motion for Judgment on the Administrative Record and grants Defendant's Cross Motion for Judgment on the Administrative Record.

**BACKGROUND**

Plaintiff Ramos is a male born in 1961. From 1989 through 2002, Ramos was an employee of Wyeth, a company formerly known as American Home Products Corporation. Ramos suffered a work related back injury on July 12, 2002. On September 23, 2002, Ramos submitted a claim for LTD benefits under the American Homes Products

2

Corporation Group Insurance Plan ("the Plan"), along with an attending physical statement, completed and signed by a specialist in physical medicine and rehabilitation. On April 21, 2003, MetLife approved Ramos' claim and began paying him LTD benefits effective January 18, 2003, which was the conclusion of the six month waiting period as set forth in the plan.

In April 2003, MetLife retained the services of Corvel, Inc. ("Corvel") to investigate and submit a vocational assessment report of Ramos as part of the ongoing investigation of his claim. On May 12, 2003, Corvel submitted its Initial Vocational Assessment report prepared by a vocational case manager. After her interview with Ramos, the case manager concluded that Ramos possessed most non-physical aspects required of his previous position and could perform certain physical aspects related to sedentary work, including talking, hearing, seeing, writing and reading. The report ultimately recommended a Functional Capacity Evaluation and continued follow ups of Ramos' medical treatment

On September 29, 2003, Ramos underwent a Functional Capacity Evaluation. The evaluation recognized Ramos' limitations, including his inability to work below the waist level. The evaluation did state, however, that Ramos could perform "at a light physical demand level with maximum lifting of 10 lbs. " The report concluded that Ramos could perform the duties of his previous position with certain accommodations.

On November 7, 2003, Ramos attending psychiatrist, Dr. Guillermo Hoyos, submitted a statement of functional capacity, opining Ramos was totally disabled and unable to return to work. In December 2003, Dr. Hoyos submitted a Psychiatric report, reiterating Ramos was totally disabled and unable to return to work. In March 2004, Ramos was examined by Dr. Ricardo A. Fumero, a psychiatrist retained by Corvel to perform a medical evaluation. Dr. Fumero concluded that Ramos had a severe mental condition was not recommended to return to work in the near future.

Upon review of Ramos' entire file, MetLife approved Ramos' claim for LTD benefits since he was unable to perform the duties of *his* occupation on June 8, 2004. The letter further stated that in order to continue receiving LTD benefits beyond January 17,

2005, Ramos must be unable to engage in *any* employment, as required by the Plan. The letter also required Ramos to complete and submit a Personal Profile and Medical Authorization form in addition to copies of office notes, test results and treatment plans from all Ramos' providers from January 2004.  On June 29, 2004, Ramos submitted the Personal Profile requested by MetLife in the June 8, 2004 letter.  The profile listed seven different physicians with whom Ramos had consulted in connection with his condition, along with the State Insurance Fund.  In July 2004, MetLife also received a mental behavioral functional assessment report from Dr. Hoyos.

MetLife sent Ramos another letter referencing its June 8, 2004 letter approving LTD benefits.[1]  The letter stated that MetLife had yet to receive the medical information from Ramos' physicians, including the forms and office notes.  MetLife advised Ramos that failure to submit the required information by July 28, 2004 would result in the closure of his claim.  MetLife subsequently received an attending physician statement form signed and completed by Dr. Matta, Dr Matta's progress notes, a copy of a radiology consultation request signed by Dr. Jesus Romero Perez and a Medical Certification and progress notes from Dr. Hoyos.

In a letter dated September 17, 2006, MetLife informed Ramos that after review of his file, he was no longer met the Plan's eligibility requirements to continue receiving LTD benefits.  This determination was based upon the documentation submitted by Ramos, including the attending physicians statement by Dr. Matta, the office visit notes from Dr. Hoyos and a telephone interview with a clinical psychiatric specialist on August 9, 2004. Due to the lack of objective medical information supporting Ramos' inability to function, MetLife denied his claim for continued LTD benefits.  The letter concluded that the materials submitted and the phone interview did not substantiate the severity of impairments precluding Ramos from engaging in any substantial employment.

On October 25, 2004, Ramos appealed the decision to terminate his LTD benefits.

---

[1] The letter is also dated June 8, 2004.  Given the reference to the original June 8, 2004 letter sent to Ramos approving LTD benefits, the Court assumes the date is a typographical error.

As a result of the appeal, MetLife sent Ramos' entire claim and file to two independent physician consultants, Dr. Phillip Adamo, a Board Certified Specialist in Internal and Occupational Medicine and to Dr. Ernest Gosline, a Board Certified Psychiatrist. After reviewing the materials submitted, Dr. Adamo concluded that the information provided was not sufficiently compelling to substantiate the severity of Ramos' alleged condition. Specifically, Dr. Adamo concluded that there was not enough evidence to support a finding of total disability or that Ramos was unable to function in a position that has light to medium physical demands. Dr. Gosline submitted a separate review of Ramos' file, concluding that Ramos' file did not provide compelling evidence of his inability to function at his own job with certain modifications. On December 23, 2004, MetLife sent a letter to Ramos upholding its initial decision to terminate LTD benefits, based on the independent evaluations of Dr. Gosline and Dr. Adamo. Ramos subsequently brought this action pursuant to ERISA, seeking to recover the LTD benefits.

## STANDARD OF REVIEW

ERISA governs the rights and responsibilities of parties in relation to employee pension and welfare plans. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 650-651 (1995). ERISA establishes a cause of action for plan participants and other beneficiaries "to recover benefits due to him under the terms of his right to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA does not establish a standard of review for which courts should apply when considering benefits claims under 29 U.S.C. § 1132(a)(1)(B). The Supreme Court, however, held that a "denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or the fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the arbitrary and capricious discretion standard is employed. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Varity Corp. v. Howe*, 516 U.S. 489 (1996); *Cortes v. Metlife, Inc.*, 122 F.Supp.2d 121 (D.P.R. 2000).

The First Circuit has applied the aforementioned doctrine to mandate *de novo* review

of benefits determinations, unless "a benefits plan...clearly grant[s] discretionary authority to the administrator." *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 583 (1st Cir. 1993); *see also Terry v. Bayer Corp.,* 145 F.3d 28 (1st Cir. 1998); *Recupero v. New England Telephone & Telegraph Co.*, 118 F.3d 820 (1st Cir. 1997). Where the clear discretionary grant is found, "*Firestone* and its progeny mandate a deferential arbitrary and capricious standard of judicial review." *Recupero,* 118 F.3d at 827.

Plaintiff maintains that the decision to terminate his LTD benefits should be reviewed under the *de novo* standard because the Plan Administrator failed to use his discretion when reviewing the medical evidence and mechanically applied the exclusion criteria. In opposition, MetLife argues the proper standard for review is the arbitrary and capricious standard, since the Plan expressly grants discretionary authority to make the necessary and final decisions concerning eligibility for benefits. The Plan explicitly provides

> The persons listed above for claim review have discretionary authority under the Group Insurance Program to determine eligibility for benefits and to construe the terms of the respective Plans, as indicated. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation of determination was arbitrary or capricious.

American Home Products Corporation, Employees Group Insurance Program, page 68.

The First Circuit in *Rodriguez-Abreu* counsels that the grant of discretionary authority must be clear. *Id.* at 58. Upon reviewing the Plan language cited above, the Court finds only one interpretation. The cited provision clearly grants broad discretion to determine eligibility for benefits and construe the terms of the Plan. Under this aegis, the decisions of MetLife are, therefore, entitled to deferential review.

**DISCUSSION**

The Court now turns to the heart of this appeal and determines whether MetLife's decision to terminate Ramos' LTD benefits was arbitrary and capricious. Under the arbitrary and capricious standard, also called the "abuse of discretion" standard, the Plan Administrator's decision will be upheld "if it was within [the administrator's] authority, reasoned and 'supported by substantial evidence in the record.'" *Doyle v. Paul Revere Life*

*Ins. Co.,* 144 F.3d 181, 184 (1st Cir. 1998) (*quoting Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1stCir. 1997)).  Substantial evidence is "evidence reasonably sufficient to support a conclusion." *Id*.  Furthermore, contradictory evidence does not necessarily defeat a finding of sufficiency.  *Id.; see also Cortes,* 122 F.Supp.2d at 129.  Consequently, in the ERISA context, "a fiduciary's interpretation of a plan will not be disturbed if reasonable." *Terry,* 145 F.3d at 40.  In applying an abuse of discretion standard, the reviewing court must affirm the decision if a "reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Ferrari v. Teachers Ins. and Annuity Ass'n,* 278 F.3d 801, 807 (8th Cir. 2002).  Accordingly,  "a court is not to substitute its judgment for that of the [decision-maker]." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

In reviewing the denial of benefits under the arbitrary and capricious standard of review, the Court considers, "only the arguments and evidence before the administrator." *Cortes*, 122 F.Supp.2d at 130; *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380-81 (10th Cir. 1992)*; see also Doe v. Travelers Ins. Co.,* 167 F.3d 53, 57 n. 3; *Kiley v. Travelers Idemnity Co. of Rhode Island*, 853 F.Supp. 6, 13-14 (D.Mass. 1994). The District Court, however, possesses jurisdiction over the resolution of both factual and legal disputes about the scope of the record to be considered by it.  *Recupero*, 118 F.3d at 836.

After reviewing the standard for Total Disability under the Plain and the evidence before MetLife, the Court concludes that MetLife did not abuse its discretion in denying Plaintiff's claim for disability benefits.  MetLife's reason for its decision to uphold the termination of benefits was that Ramos no longer met the Plan's definition of disability.  The plan defines "total disability" as follows:

> During the waiting period (six months) and the first 24 months that LTD benefits are payable, "total disability" means the complete inability to perform the duties of your occupation.
>
> **After this 30-month period "total disability" means the inability to engage in any substantial gainful employment for which you are reasonably fitted by education, training or experience**.
>
> You will not be considered totally disabled during any period in which you are

> gainfully employed in any occupation except for approved rehabilitative employment.
>
> Medical proof of total disability is required before benefits become payable and will be required periodically during the continuance of your disability.

American Home Products Corporation, Employees Group Insurance Program, page 34. (emphasis added). The issue before the Court involves the definition of "total disability" after the thirty month period under the terms of the Plan.

On April 21, 2003, MetLife approved Ramos' initial claim and began paying him LTD benefits effective January 18, 2003, which was the conclusion of the six month waiting period set forth in the plan. On June 8, 2004, MetLife again approved Ramos' claim for LTD benefits, since Ramos was unable to perform the duties of *his* occupation. The letter stated however, that in order to continue to receive benefits beyond January 17, 2005, Ramos would have to fulfill the definition of total disability after the thirty month period, meaning the inability to engage in *any* substantial gainful employment.

In June 2004, MetLife received parts of Ramos' medical record, including a attending physician statement signed by Dr. Matta, copies of Dr. Matta's notes, a copy of a radiology consultatio report, and copies of Dr. Hoyos' office notes. After review and evaluation of the aforementioned medical information and Ramos' administrative record, MetLife determined that Ramos no longer met the Plan's eligibility requirements to continue receiving LTD benefits due to lack of objective evidence supporting a claim of total disability prohibiting him from engaging in *any* gainful employment. While the record indicated Ramos was unable to perform the duties of his prior occupation without accommodations, there was not sufficient evidence that Ramos could not perform any work. Ramos submitted a letter appealing the decision to terminate payment of LTD benefits.

On appeal, MetLife considered all of the medical records Ramos submitted in support of his disability claim. Ramos' claim and entire medical file was referred to two different independent physician consultants for evaluation, Dr Adamo, a board certified specialist in internal medicine and occupation medicine and Dr. Gosline, a board certified psychiatrist. Dr. Adamo and Dr. Gosline reviewed Ramos' file independently and both concluded that

Ramos' file lacked objective medical evidence supporting his claim of total disability and the inability to engage in any gainful employment.  Dr. Adamo made specific references to Ramos' administrative record, including the Functional Capacity Evaluation.   After reviewing Ramos' file on appeal, MetLife made a permissible choice between conflicting opinions and decided to rely on the results of the independent evaluations of Dr. Adamo and Dr. Gosline.  This decision does not evince and abuse of discretion.  *See Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 380 (7th Cir. 1994) (MetLife's denial of benefits was not arbitrary and capricious when its "decision came down to a permissible choice between the position of UMAC, MetLife's independent medical consultant, and the position of [the claimant's physicians].").

The Court concludes that the Defendant did not act arbitrarily or capriciously in terminating payment of LTD benefits, inasmuch as the evidence did not demonstrate Ramos was totally disabled and could not engage in *any* substantial gainful employment.  The record contains  sufficient evidence supporting the conclusion that Ramos was not "totally disabled" after the thirty month period as defined by the Plan.  The Court is mindful of the harsh result to Ramos in this case, and while it is sympathetic to the Plaintiff's plight, the Court has an unwavering obligation to apply the law to every case that comes before it. *Kracht v. Aalfs Assocs. H.C.P.*, 905 F.Supp. 604, 618 (N.D.Iowa 1995).

## CONCLUSION

**WHEREFORE,** Plaintiff's Motion for Judgment on the Administrative Record in **denied** and Defendant's Cross Motion for Judgment on the Administrative Record is **granted**.  The case is ordered dismissed.  The Clerk shall enter judgement accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 25, 2006.

S/ HECTOR M. LAFFITTE
Senior United States District Judge